UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PERSONNEL STAFFING GROUP, LLC, a Florida limited liability company d/b/a MVP Staffing,<br><br>*Plaintiff,*<br><br>vs.<br><br>PROTECTIVE INSURANCE COMPANY an Indiana corporation,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)  1:21-cv-1926-JPH-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court are two motions by Plaintiff, Personnel Staffing Group, LLC ("PSG"): (1) a Motion for Leave to File a Motion in Support of the Application of California State Law; and (2) a Motion for Retransfer. [Filing No. 119; Filing No. 121.] For the reasons set forth below, Plaintiff's Motion for Leave is **GRANTED,** and Motion for Retransfer is **DENIED.**

### I.
### BACKGROUND

PSG filed this action against Protective Insurance Company ("Protective") on June 28, 2019, in the Superior Court of Los Angeles County, California. PSG's complaint asserts claims for breach of contract and tortious breach of the implied covenant of good faith and fair dealing. [Filing No. 1-1.] Protective has denied those claims and filed counterclaims asserting causes of action for breach of contract, declaratory judgment, violation of the Lanham Act (15 U.S.C. § 1125), negligent misrepresentation, fraud, violation of Ind. Code § 34-24-2 (Civil Remedies for Racketeering Activity), and injunctive relief. [Filing No. 79.]

On August 2, 2019, Protective removed the action to the California federal court based on diversity jurisdiction and moved to dismiss on August 9, 2019. [Filing No. 1, 13.]

On April 28, 2020, the California Central District Court (the "Central District") granted dismissal based on *forum non conveniens.* [Filing No. 44.] PSG appealed the decision to the Ninth Circuit on May 4, 2020. [Filing No. 45.] On April 15, 2021, the Ninth Circuit reversed the Central District's decision to dismiss, finding dismissal on *forum non conveniens* grounds "is unavailable if transfer to another federal district court is possible under 28 U.S.C. § 1404(a)". [Filing No. 49 at 2-3.] The Ninth Circuit also found that the forum selection clause contained in the Indemnity Agreement was permissive and not mandatory; "[t]he contract requires only that the parties submit to personal jurisdiction in Indiana; it does not require that litigation be conducted in a particular forum." [Filing No. 49 at 3.] The Ninth Circuit remanded the case back to the Central District to "allow a section 1404(a) transfer motion to be made". [Filing No. 49 at 3.]

Protective moved to transfer on May 26, 2021. [Filing No. 55.] On June 29, 2021, the Central District granted Protective's motion. [Filing No. 61.] The Central District noted it "carefully consider[ed] the papers filed in connection with the Motion" and under Section 1404(a), the "same findings underlying the Court's prior order still apply in support of transfer to the district court in the Southern District of Indiana." [Filing No. 61 at 1-2.] On June 30, 2021, the Central District transferred this case to this Court. [Filing No. 62.]

PSG filed a Motion for Choice of Law on December 13, 2021, requesting this Court determine if this dispute should follow California law, instead of Indiana's. [Filing No. 115.] In December 2021, the parties appeared for a status conference where this Court inquired about PSG's pending Motion for Choice of Law. Following this conference, this Court instructed the parties that it would take the matter under advisement and issue an order directing whether PSG was

required to seek leave of Court to file the Motion for Choice of Law. This Court subsequently issued a minute order directing PSG to file a motion for leave explaining why it is necessary at this stage for the Court to consider choice of law. [Filing No. 117.]

PSG filed their Motion for Leave, [Filing No. 119], on January 3, 2022. Subsequently, PSG filed a Motion for Retransfer, [Filing No. 121], on January 14, 2022.

## II.
### MOTION FOR RETRANSFER

In its Motion for Retransfer, [Filing No. 121], PSG requests this Court find the Central District's Section 1404(a) analysis manifestly erroneous and that there are changes in circumstances warranting reevaluation of the Section 1404(a) factors for transfer back to the Central District. [Filing No. 121.] PSG seeks retransfer under Section 1404(a) and Federal Rule of Civil Procedure 54(b).

Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) (stating that a judge has the power to reconsider an interlocutory order at any time before final judgment). A Rule 54(b) motion for reconsideration allows this court to reconsider any non-final order, such as an order transferring venue, "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

Ordinarily, a motion for reconsideration is decided by the judge who made the original ruling. A unique situation occurs when a party seeks reconsideration of an order transferring a case to another district, and that case has already been transferred. This permits another district to reconsider the previous district's order. Once the transfer occurs, the transferor court loses

jurisdiction over the case. *Jones v. InfoCure Corp.*, 310 F.3d 529, 533 (7th Cir. 2002). This case was transferred to this district on June 30, 2021, following the order granting transfer on June 29, 2021, so this court has authority to reconsider the Central District's order. [Filing No. 61; Filing No. 62.]

First, this court adheres to the law of the case doctrine. Though the court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). This rule applies to decisions involving transfer because courts do not want to "send litigants into a vicious circle of litigation." *Id.* at 816; *see In re Mathias*, 867 F.3d 727, 730 (7th Cir. 2017); *United States v. Wyatt*, 672 F.3d 519, 523 (7th Cir. 2012); *see also Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (avoid "perpetual litigation by playing jurisdictional ping-pong"). Generally, this Court should not "respond by batting the suit back again." *Wyatt*, 672 F.3d at 523. If a motion to transfer is granted under Section 1404(a), "the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" *Foster v. Ethicon, Inc.*, 2021 WL 1739952 (N.D. Ind. 2021) (quoting *United States v. Koenig*, 290 F.2d 166, 173 n.11 (5th Cir. 1961)); (*see also In re Cragar Industries, Inc.*, 706 F.2d 503 (5th Cir. 1983) (noting the potential trouble of tossing cases back and forth and avoiding adjudication)).

District courts have "broad discretion to grant or deny a motion to transfer under § 1404(a)." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.

1989). Together, the law of the case doctrine and the district court's broad discretion under Section 1404(a) presents an uphill battle to reverse the transfer order here. *See In re Mathias*, 867 F.3d at 730.

    A.    **Manifest Error**

PSG first argues manifest error occurred where the Section 1404(a) factors were not given proper consideration by the Central District, and that court's erred by adopting its analysis of *forum non conveniens* factors. [Filing No. 122 at 7.] PSG then contends the Central District failed to account for evidence it submitted for the first time in opposition to the transfer motion, namely that concentrated insured risk is in California and the inability of this district to compel non-party witnesses at trial. [Filing No. 122 at 7-8.] Lastly, PSG argues the Central District did not take into consideration the Ninth Circuit's decision overturning its interpretation of the forum selection clause within Protective's Indemnity Agreement and ignored the decision by the Insurance Commissioner, finding the Indemnity Agreement void *ab initio*. [Filing No. 122 at 8.]

A manifest error means a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Insurance*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Review of the record reveals no manifest error of the Central District's Section 1404(a) analysis.

    1.  **Consideration of Evidence**

First, the Central District started its decision by outlining the Section 1404(a) factors, noting its broad discretion to transfer and that it had considered similar questions in Protective's motion to dismiss pursuant to *forum non conneniens*. [Filing No. 61 at 1-2.] In its analysis, the Central District found its prior order applied in support of transfer; "the Court finds that this action

could have been brought in the [Southern District of Indiana], and the parties' and witnesses' convenience, as well as the interest of justice, favor transfer." [*See generally* Filing No. 44; Filing No. 61 at 3.] Contrary to PSG's claim that the Central District did not consider its arguments or submitted evidence, the California Central District explicitly noted its consideration of the papers filed in connection with PSG's Motion to Transfer and it considered the evidence submitted as part of the *forum non conveniens* motion. [Filing No. 61 at 1.] While the Central District did not outright detail every piece of evidence considered in its transfer order, this Court finds no manifest error in the Central District's evaluation of evidence in connection with Protective's motion to transfer.

2. **Majority of Risk**

Next, PSG relies heavily on the fact that a "majority of the risk" is in California and thus asserts California law applies to the claims. [Filing No. 122 at 9.] These allegations will not operate to make California's relationship to the contracts at issue more significant than that of Indiana for a Section 1404(a) analysis. In the present case, PSG's claims are based in tort law and breach of contract. [Filing No. 1-1.] While the present case is related to workers' compensation claims administered to workers in California (and admittedly other states), PSG's claimed injuries results from Protective's alleged breaches of contract and bad faith in handling workers' compensation claims under its contracts. This argument is better taken under consideration during a choice of law analysis, which PSG has requested this Court grant leave to brief and decide.

3. **Compelling of Non-Party Witnesses**

PSG then contends the Central District erred in evaluating non-party witness appearances; namely that this District cannot compel non-party witnesses, detailing specifically its Korey

Richardson attorneys based in California, to appear in-person for trial in Indiana. [Filing No. 122 at 9-11.]

Both PSG and Protective note non-party witnesses and their possible inabilities to be subpoenaed for in-person appearance at trial, whether venue is in the Central District or the Southern District. PSG reiterated in the instant motion that the Korey Richardson attorneys from California would be potentially unwilling witnesses and are outside of this Court's subpoena power. [Filing No. 122 at 22.] It further argues the Central District mischaracterized the current law concerning subpoena power regarding depositions, arguing that under the amended Rule 45, the Court now has the power to issue nationwide service of subpoenas. [Filing No. 122 at 24.] Protective argues that those Korey Richardson attorneys worked on only some of the claims that PSG alleges were mishandled and that Korey Richardson is headquartered in Chicago, Illinois, where principal attorney Carter Korey advised PSG on Protective's claims handling. [Filing No. 126 at 15.]

It appears that the Central District properly evaluated this argument. The Central District observed PSG's Illinois-based insurance broker (Mr. Jeff Friedrich) and California-based counsel would potentially be unwilling to testify. [Filing No. 61 at 9.] It also appears that in its evaluation, the Central District opined that many witnesses relevant to the contracts at issue are in Indiana and Illinois and appear to be citizens of these states, and thus were either outside of the Central District's subpoena power, or within the Southern District's. [Filing No. 61 at 9.] And while PSG is correct that the Court's subpoena power regarding depositions spans nationwide, this does not assist in weighing the district's convenience.

While it is true that PSG has identified that the Southern District forum is inconvenient for their California-based attorneys and unidentified other non-party Californian witnesses to appear

in-person for trial, it has not shown that these individuals would necessarily be unwilling to testify if asked to do so in the transferor court. Additionally, there would be non-party witnesses who would be unavailable for in-person trial appearance via the court's subpoena power if this case were in either district. Thus, the locations of these unidentified non-party witnesses are neutral at this juncture. In addition, this Court finds persuasive the fact that Mr. Friedrich, PSG's insurance broker, was the only witness that both parties have identified who moved following the Central District's transfer order. [Filing No. 122 at 11.] While Mr. Friedrich would not be within the subpoena power of either court, PSG again does not make mention of his unwillingness to provide testimony if requested. Therefore, his availability as a witness is also neutral.

From review of the Central District's evaluation of this factor, this Court finds its evaluation was not manifestly erroneous.

**4. Indemnity Agreement**

Lastly, PSG claims the Central District did not take into consideration the Ninth Circuit's opinion regarding the Indemnity Agreement, where it found the agreement permissive and requiring "only that the parties submit to personal jurisdiction in Indiana; it does not require that litigation be conducted in a particular forum." [Filing No. 49 at 3; Filing No. 122 at 29.]

However, the Central District's order explicitly recounts this very citation and states its "findings underlying the Court's prior order still apply in support of transfer to the district court in the Southern District of Indiana." [Filing No. 61 at 2.] The California Central District, in its prior order on motion to dismiss, detailed consideration of two arguments: (1) the Indemnity Agreement's forum selection clause directs litigation in Indiana; and (2) in the absence of the forum

selection clause, Indiana is an adequate alternative forum because private and public interest factors weigh in favor of Indiana. [Filing No. 44 at 7-11.]

"'In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations.' When the case involves a forum-selection clause, however, private interests drop out of the equation." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890 (7th Cir. 2018) (citing *Atl. Marine Const. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 134 S.Ct. 568, 581-82). The Central District's evaluation and consideration of both public and private interest factors, and consideration of the argument of Indiana as the proper forum even in the absence of the forum selection clause, support this Court's opinion that there was no manifest error in its decision to transfer to the Southern District.

Ultimately, this Court finds no manifest error with the California Central District's Section 1404(a) analysis. The Court now turns to whether there are extraordinary circumstances that warrant a reevaluation of transfer.

B. **Change in Circumstances**

PSG's final argument is that Protective filed its Counterclaims following transfer to the Southern District of Indiana and filed a Petition for Writ of Preemptory Mandate in the California Superior Court seeking to overturn the California Insurance Commissioner's decision regarding the Indemnity Agreement, which illustrate a change in circumstances that weigh in favor of a transfer back to the Central District. [Filing No. 127 at 6.]

The Court in *In re Cragar Industries, Inc.* articulated that while retransfer is frowned upon:

> [i]t does not follow, however, that a transferee court is powerless to act where the original purposes of the transfer have been frustrated by an unforeseen later event. When such unanticipatable post-transfer events frustrate the original purpose for transfer, a return of the case to the original transferor court does not foul the rule of the case nor place the transferee court in a position of reviewing the decision of its sister court.

706 F.2d 503, 505 (5th Cir. 1983); *See also* Russel v. IU Int'l. Corp., 685 F. Supp. 172 (N.D. Ill. 1988) (found purpose of original transfer was frustrated by unanticipated change of circumstances that justified retransfer to district where it was originally filed). The Court in *Crager* instructs that a post-transfer event must be "unanticipatable." 706 F.2d at 505.

Protective argues its Counterclaims are substantially like the claims it asserted previously. [Filing No. 126 at 20] n. 4.] Protective contends that its Counterclaims allege "breach of contract, Lanham Act violations, negligent misrepresentation, fraud and racketeering activity" which involve activity that occurred in Indiana and Illinois. [Filing No. 126 at 21-22.] While PSG's Counterclaims were filed post-transfer, they do not appear to frustrate the purpose of the transfer.

In its evaluation, the Central District began by noting Protective is incorporated and headquartered in Indiana. [Filing No. 44 at 7.] The Court then noted that the insurance agreements were negotiated and entered in Indiana and Illinois, and the alleged infractions occurred in Indiana. [Filing No. 44 at 2, 7-11.] Additionally, Protective's Counterclaims, which the Central District did not have available or take into consideration when considering transfer, allege wrongful conduct occurring in Indiana, directed at PSG. [Filing No. 79 at 25-45.] Such additional claims revolving around alleged conduct in Indiana further weigh in favor of the Central District's transfer to the Southern District. As such, Protective's Counterclaims do not create an unaniticipatable post-transfer event warranting reevaluation of transfer.

Lastly, Protective argues that the administrative appeal of the California Insurance Commissioner's decision applies only to enforcement of the Indemnity Agreement in California, not in any other state, including Indiana. [Filing No. 126 at 22.] The California Central District noted the parties' litigation of the Indemnity Agreement before the California Department of Insurance in its motion to dismiss order. [Filing No. 49 at 9.] It cannot be said that Protective's appeal of the Department of Insurance's order would be an unforeseeable change that would be outside of a party's influence. See, e.g., *Castillo v. United Air Lines, Inc.*, 1996 WL 332669 (N.D. Ill. 1996) (finding that the death of the presiding judge was a "classic case of changed circumstance"); *HAB Carriers Inc. v. Arrow Truck Sales, Inc.*, 2009 WL 2589108 (D.N.J. 2009) (finding that an unanticipated dismissal of a party two years after transfer was an "unforeseeable post-transfer event.").

Because there has been neither manifest error in the California Central District's application of law or extraordinary circumstances that frustrate the original purpose of transfer to this district, this Court finds the California Central District's prior transfer to the Southern District of Indiana was proper and declines to reevaluate the Section 1404(a) factors for transfer back to the California Central District. Plaintiff's Motion to Retransfer is **DENIED.**

### III.
### MOTION FOR LEAVE

Next, in its Motion for Leave to File a Motion in Support of the Application of California State Law, PSG suggests: (1) the choice of law issue should be resolved in compliance with the court-approved case management plan; (2) the choice of law motion is not subject to the leave of court requirement for Rule 56 summary judgment motions; (3) and Protective will not be prejudiced by a prompt resolution of the choice of law issue, however a later determination would

cause such an issue. [Filing No. 120.] PSG relies on Federal Rule of Civil Procedure 1 and 16 in support of granting leave. [Filing No. 120 at 5.] It argues that this Court should grant leave for it to argue the choice of law issue "in order to facilitate the just, speedy, and inexpensive disposition of this action." [Filing No. 120 at 5.]

Federal Rule of Civil Procedure 16 instructs the court to "establish[] early and continuing control so that the case will not be protracted because of lack of management" and "discourage[e] wasteful pretrial activities," ensuring the "just, speedy and inexpensive disposition of the action." Fed. R. Civ. P. 16(a)(2)-(3), (c)(2)(P). District courts have an important and inherent authority and obligation to control their calendars and ensure that litigation proceeds expeditiously. *See James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005); *see also* Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Under Section IX of the operative Case Management Plan in this matter, is a "Choice of Law" notation, and is the only iteration of such language in the document. [Filing No. 108 at 21.] This section notes PSG's opinion that California law should apply and that "choice-of-law is an issue that looms large in this case and will have to be decided early in this case". [Filing No. 108 at 21.] Protective provides their viewpoint in this section, disputing PSG's opinion that California law applies in this matter, but does state it "welcomes the opportunity to fully brief the choice-of-law issues for the Court's consideration". [Filing No. 108 at 21-22.] PSG contends that though Protective expressly welcomed the opportunity to brief the choice-of-law issue, it is now avoiding the issue in an attempt at delay. [Filing No. 121 at 4-5.]

Protective argues that the choice of law motion is premature because such a motion is fact-intensive, and discovery has just begun, and such examinations should be treated as a dispositive

motion. [Filing No. 124 at 9.] Protective contends the dispositive motion schedule should rule in this instance, where discovery precedes and concludes before dispositive motions are filed. [Filing no. 124 at 10.] PSG argues this Court must resolve the Motion for Choice of Law to address discovery issues, and so the parties will not "be constrained in terms of setting the scope and substance of their written discovery." [Filing No. 120 at 10.]

The Court acknowledges both parties' practical concerns regarding discovery. However, the briefing of PSG's pending choice of law motion has been stayed at this time, allowing both parties to continue the discovery process while the Court has evaluated the question of whether to resolve choice-of-law at this time. It is apparent that identified conflict of laws has become important to decide so that further discovery can be shaped by the correct governing law. The parties, armed with this knowledge, can then properly allocate their resources efficiently and make informed decisions about settlement and litigation. The Court finds that a fuller factual record is not necessary at this time to properly undertake the choice-of-law analysis and assess California's and Indiana's interests in having their rule of decision applied. Of course, if further discovery reveals new facts after a choice of law determination has been made, the parties can ask the Court to revisit such a decision.

The Court **GRANTS** Plaintiff's Motion for Leave, [119].

### IV.
#### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Motion in Support of the Application of California State Law, [119], is **GRANTED** and Plaintiff's Motion for Retransfer, [121], is **DENIED**.

Defendant shall have fourteen (14) days of the date of this Order to respond to the Plaintiff's Motion for Choice of Law and Brief in Support, [115; 116]. Plaintiff will then have seven (7) days to reply, following the Defendant's response, if one is filed.

Date: 5/9/2022

*Mario Garcia*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**