UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PERSONNEL STAFFING GROUP, LLC a Florida limited liability company d/b/a MVP STAFFING, <br><br> Plaintiff, <br><br> v. <br><br> PROTECTIVE INSURANCE COMPANY an Indiana corporation, DOES 1 through 50, <br><br> Defendants. | No. 1:21-cv-01926-JPH-MG |

**DISCOVERY CONFERENCE ORDER**

The parties appeared before the Court by counsel on November 22, 2022, to address various discovery disputes. In brief, this action was brought by Personnel Staffing Group ("PSG"), claiming Protective Insurance Company ("Protective") breached certain workers' compensation insurance policies by failing to properly handle, adjust, settle, and pay PSG workers' compensation claims, and that Protective did so in bad faith. [Filing No. 1.] Protective has filed counterclaims, including various allegations of breach of contract, declaratory judgment, violation of the Lanham Act (15 U.S.C. § 1125), negligent misrepresentation, fraud, violation of Ind. Code § 34-24-2 (Civil Remedies for Racketeering Activity), and injunctive relief. [Filing No. 79.]

The parties appeared by counsel on November 22, 2022, for a telephonic discovery conference to address a discovery dispute. At the Court's request, the parties submitted position statements regarding PSG's request to produce, Nos. 96 and 97, relating to the production of worker's compensation claim files, and Protective's request for production,

No. 41, regarding the identification and production of documents relating to PSG"s disputes with other workers' compensation insurers.

As an initial matter, this Court has broad discretion when deciding discovery matters. Fed. R. Civ. P. 26(c); *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Additionally, "information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Relevance is broadly construed in discovery matters. The Rule provides "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Further, Rule 26(b) provides that the scope of discovery may be "limited by court order" and Rule 26(c) requires the court to limit discovery if the court determines that the burden on one party outweighs the benefits to the other.

The Court now rules as to the following:

    1.    **<u>PSG's Request for Production Nos. 96 and 97</u>**

These requests seek a sample of 50 workers' compensation case files—sampled from a total of 6,731 files handled by Protective during the parties' relationship—which contain information such as: (1) claim handlers' notes and diaries; (2) injured workers' medical records; (3) litigation materials including pleadings and discovery; (4) correspondence; (5) payment logs; and (6) investigative materials.

PSG contends that these complete claims files are relevant for the evaluation of liability because the lawsuit is based on an insurer's breach of duties owed to an insured. Further, PSG argues that this sampling of 50 claims files is at issue, namely because it claims that Protective has breached its duties regarding every claim during the lifetime of the parties' agreement. However due to practicality and cost considerations, PSG contends that a sampling of the files to identify and present at trial is appropriate in this instance.

Protective objects to this request, arguing that PSG has access to Protective's claims portal, which contains more than sufficient information to identify alleged claims misconduct. Protective contends that PSG can view claims notes,[1] reserves calculations, and financial data for each specific claim and the charges incurred. Protective contends that PSG and its insurance broker have conducted multiple audits of Protectives claim handing using access to the claims portal to identify claims for further testing and discussions, reasoning PSG is more than capable of identifying allegedly mishandled claims without the full claims file. Protective further argues that sampling is an inappropriate method, arguing it is nothing more than a fishing expedition seeking to identify a cause of action. Protective contends that PSG lacks evidence of claims mishandling for the 50 identified claims files in the sample, let alone the entirety of the 6,731 claims in total that Protective handled.

Courts that have addressed the applicability of the work product doctrine and the production of contents in a claims file in a bad faith insurance claim are split as to whether these documents should be produced. For instance, in *Prisco Serena Sturm Architects, Ltd. v. Liberty*

---

[1] Protective contends the claims notes provide a detailed record of Protective's handling of the claim which includes: (1) claims handlers' notes and diaries; (2) descriptions of all of Protective's actions in handling the claims; (3) the dates of communications of the claimant and/or counsel; (4) detailed excerpts of all relevant evidence submitted for the claim.; and (5) in some instances medical records, communications, and other supporting documentation.

*Mut. Ins. Co.,* 1996 WL 89225, *1 (N.D.Ill.1996), the court compelled production of the claims file noting:

> The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. ... It follows that where allegations of bad faith exist against an insurance company, the plaintiff insured is entitled to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision.

*Id.* at *1 (internal quotations omitted). As to the insured's substantial need, the court concluded that the "insurance claims file is likely to be the sole or primary source." *Id.*

Similarly, in *Transport Insurance Company, Inc. v. Post Express Company, Inc.,* 1996 WL 32877, *3 (N.D.Ill.1996), the court found a substantial need, compelling production of the file because the "claims file, which Post Express seeks, is the only record of how Transport handled the claim and, therefore, the only evidence on whether Transport acted reasonably or in good faith in failing to settle the claim against Post Express in the [insured's] lawsuit." *Id.* at *3. Other courts have concurred with this result. *See, e.g., Silva v. Fire Ins. Exchange,* 112 F.R.D. 699 (D. Mont. 1986); *Brown v. Superior Court In and For Maricopa County,* 137 Ariz. 327, 670 P.2d 725, 734 (1983); *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies,* 123 F.R.D. 198, 203 (M.D. N.C. 1988); *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992).

On the other hand, other courts have concluded that claims files are protected by the work product doctrine. In *Ring v. Commercial Union Ins. Co.,* 159 F.R.D. 653 (M.D. N.C. 1995), the court noted that "[w]hile arguably it may be more difficult to prove a claim of bad faith failure to settle without examining an insurance company's claims file, that does not mean it is impossible." *Id.* at 657. The court also noted Rule 11 requires the plaintiff to have a reasonable basis in fact to bring the claim. *Id.* Finally, the plaintiff could "thoroughly depose and examine the

defendants' adjuster to find out all of his actions and decisions leading to the denial of the claim." *Id.*

In this instance, the Court finds that the former approach is more persuasive. This is a case in which records are insufficiently available to review the handing of claims in determining whether Protective breached its various duties under the terms of its contract and whether it acted in bad faith. There has also been a showing of a potential evidentiary gap. PSG has presented sufficient evidence that the files available to it via the online claims portal are insufficient to provide pertinent information on how the claims were handled by Protective. While Protective cites an issue with discovery advancing in a sampling manner, it cites no authority for the proposition that proving breach of contractual duty and bad faith based on a theory of claims mishandling, cannot be done by a random sampling method of individual workers' compensation claims across the lifetime of the claims handled by Protective.

Further, sampling would achieve Rule 26's demand for proportionality in this instance. The case before the court is not one of a class action, where individual claims for damages would be tried individually, but rather a single plaintiff with a claim of breach of contract and bad faith, that it claims spreads across claims during the relationship between the parties. At this point, the relevance of these materials is largely speculative, and a random sample therefore gives PSG what it seeks through these requests for production, while rendering Protective's burden reasonably proportional to the materials' purported evidentiary value.

Lastly, the Court declines to take any judicial notice of the qualification of its statistical expert or the statistical sampling method employed. Protective may challenge the admissibility, methodology and qualifications of PSG's experts and the statistical sampling method employed, and any results obtained, during cross-examination and during presentation of its defense.

This Court determines, based on the allegations in the Complaint, and so that discovery is proportional, manageable (not unduly burdensome or expensive), and consistent with the burden of proof, that discovery in this case shall involve a sampling of the complete claims files of those 6,731 claims files identified by the parties.

Protective is **ORDERED** to produce any outstanding items to PSG's request No. 96 and 97 **withing fourteen days** of this Order, which includes but is not limited to, a sample of 50 workers' compensation case files from a total of 6,731 files handled by Protective during the parties' relationship, containing information such as: (1) claim handlers' notes and diaries; (2) injured workers' medical records; (3) litigation materials including pleadings and discovery; (4) correspondence; (5) payment logs; and (6) investigative materials.

2. <u>**Protective's Request for Documents No. 41**</u>

Protective's request No. 41 seeks "[a]ll documents concerning any dispute between [PSG] and any workers' compensation insurance carrier concerning [PSG's] workers' compensation insurance coverage, claims handling, and obligations." Protective seeks the identification and production of all documents related to PSG's disputes with other workers' compensation insurers, naming specifically *Zurich American Ins & American Zurich Ins. V. Daniel Barnett, Dash Management, Inc., and Personnel Staffing Group, LLC* (IL Cook County, Case No. 2020-L-004335) and *Personnel Staffing Group, LLC v. XL Insurance America, Inc. et al.*, (W.D. Cal. Case No. 2:22-cv-6491).

Protective argues that its counterclaim—asserting PSG's breach of contract is part of a fraudulent scheme used against multiple insurers including Protective and it fraudulently concealed the existence of its disputes with other insurance carriers in its application for insurance from Protective—requires non-privileged documents from those two actions and any other actions

involving other insurance carriers that did not result in formal arbitration or litigation. Protective argues that there is no privilege concern regarding the basic information relating to these disputes, including the carrier with whom the dispute exists or existed, when the dispute arose, and the resolution of the dispute. Protective contends that these documents are directly relevant, easily identifiable and there is little burden for PSG to produce these documents.

PSG contends that Protective's request for essentially the entire case file on every litigation PSG has ever had with a worker's compensation carrier is overbroad and disproportionate to the needs of the case. PSG contends that the document request regarding any interim arbitration awards say nothing about any type of fraudulent conduct on the part of PSG or its personnel, and courts have routinely denied overbroad requests of other bad acts for similar reasons. PSG cites to *Slate v. American Broadcasting Companies, Inc.*, 274 F.R.D. 250 (DC D.C. 2011), contending that like Protective's request, the *Slate* court denied ABC's request as requiring an overly burdensome effort to identify documents that would outweigh possible relevance the information would have, thus frustrating proportionality.

The Court finds that under the broad discovery rules articulated above, Protective's document request is relevant to this litigation, where the counterclaims are focused in part on negligent misrepresentation and fraud (regarding failure of PSG to accurately report its "history and experience with claims of the nature and type for which PSG sought insurance coverage from Protective"). Identifying files relating to disputes "between [PSG] and any workers' compensation insurance carrier" would not be too burdensome, and the burden to produce responsive documents would not outweigh the possible relevance the information may have to these proceedings. See Fed. R. Civ. P. 26(b)(2)(C) (requiring the court to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit").

Consequently, PSG is **ORDERED** to respond to Protective's outstanding request No. 41 with any outstanding items, **within fourteen days** of this Order**,** and shall include documents from *Zurich, XL,* and any other identifiable disputes involving other workers' compensation insurance carriers that did not result in formal arbitration or litigation.

***

## CONCLUSION

In conclusion, the parties are ORDERED to produce any outstanding items as outlined above **within fourteen days** of this Order.

Date: 12/5/2022

                                                              Mario Garcia
                                                              United States Magistrate Judge
                                                              Southern District of Indiana

**Distribution via ECF to all counsel of record.**