UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PERSONNEL STAFFING GROUP, LLC a Florida limited liability company d/b/a MVP STAFFING,<br><br>Plaintiff/<br>Counter Defendant<br><br>v.<br><br>PROTECTIVE INSURANCE COMPANY an Indiana corporation, DOES 1 through 50,<br><br>Defendants/<br>Counter Claimant. | No. 1:21-cv-01926-JPH-MG |

**ORDER DENYING MOTION FOR CHOICE OF LAW**

Personnel Staffing Group, LLC, alleges that Protective Insurance Company breached workers' compensation insurance policies that it issued to Personnel, and acted in bad faith by mishandling Personnel's employees' claims. Protective asserts several counterclaims, including breach of contract. Personnel has filed a motion for choice of law asking the Court to find that California substantive law applies to the parties' dispute. For the reasons that follow, the motion for choice of law is **DENIED**. Dkt. [115].

I.
Facts and Background

Personnel is a temporary staffing agency registered in Florida and headquartered in Chicago, Illinois. Dkt. 135 at 3; dkt. 135-1, ¶22 (Schmeidt

1

choice-of-law Aff.).[1]  Protective is an Indiana insurance company headquartered in Carmel, Indiana.  Dkt. 135-1, ¶4.

Protective issued a total of four insurance policies to Personnel covering the period from January 1, 2017, to June 30, 2018.  Dkt. 18-2, ¶3 (Barnett Aff.); dkt. 135 at 7 ("the Policies").  The Policies provided workers' compensation insurance for Personnel's employees in 42 states.  Dkt. 18-2, ¶3 (Barnett Aff.)  The Policies required Protective to "pay promptly when due the benefits required of [Personnel] by the workers compensation law" of each state in which Personnel's employees worked.  Dkt. 55-2 at 14 (Policy No. WD001482).  "The Policies were high deductible policies whereby Personnel was responsible to pay the first $500,000 of each workers' compensation claim."  Dkt. 18-2, ¶3 (Barnett Aff.).  During the life of the insurance relationship, Personnel's workforce was concentrated in California—with about two-thirds of claims being filed by California employees.  Id., ¶7.

In March 2018, Protective informed Personnel that it would not renew the Policies, in part due to concerns that Personnel had understated its payroll during negotiations.  Dkt. 135-1, ¶33 (Schmeidt choice-of-law Aff.).  In June 2019, Personnel sued Protective in California state court for breach of contract and bad faith alleging, among other things, that Protective failed to properly defend, investigate, and resolve workers' compensation claims filed by Personnel employees as required under the terms of the Policy.  Dkt. 1-1 at 11–

---

[1] The Court accepts and recites the parties' undisputed facts for the purpose of resolving the present motion for choice of law.

12, ¶32 (State Court Complaint).  The crux of Personnel's claims against Protective is that Protective "denied [Personnel] the benefits of the workers' compensation Policies."  *Id.* at 12 ¶38.  Protective removed the case to federal court in the Central District of California, which transferred the case to this district in June 2021.  Dkt. 62.

Protective then answered the Complaint and asserted several counterclaims alleging that Personnel made material misrepresentations about the size of its insured workforce and its litigation history with previous insurers.  *See* dkt. 79.  Protective's counterclaims include breach of contract for the Policies and the Indemnity and Collateral Agreements; fraud, negligent misrepresentation, and civil racketeering; and a violation of the Lanham Act.  *Id.* at 32-43.  As relief, Protective seeks monetary damages, a declaratory judgment, and specific performance of Personnel's obligations under the Policies.  *Id.*

After transfer, Personnel filed the present motion for choice of law arguing that California substantive law should apply regardless of the change in venue.  Dkt. 115, dkt. 116.

## II.
## Applicable Law

Personnel asks for a ruling as to which substantive law—California or Indiana—will apply in adjudication of its claims against Protective.  The parties agree that, in a diversity case such as this, "[w]hen a district court with proper venue transfers a civil case to another district court, the transferee court will apply the choice-of-law rules of the state where the transferor court

sits." *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of venue under [28 U.S.C.] § 1404(a) generally should be, with respect to state law, but a change of courtrooms.")). Thus, the parties agree, this Court must begin with California choice-of-law principles. Dkt. 135 at 14–15; dkt. 136 at 1.

### III.
### Analysis

"For over four decades, California courts have resolved [choice of law] conflicts by applying governmental interest analysis." *Sullivan v. Oracle Corp.*, 127 Cal. Rptr. 3d 185, 194 (Cal. 2011). The governmental interest approach combines a consideration of the Restatement (Second) Conflict of Laws "with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration." *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 17 Cal. Rptr. 2d 713, 718 (Cal. App. 4th 1993).

In practice, the governmental interest approach involves three steps: "[f]irst, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Chen v. L.A. Truck Centers, LLC*, 213 Cal. Rptr. 3d 142, 151 (Cal. App. 5th 2017), *rev'd and remanded on other grounds*, *Chen v. Los Angeles Truck Centers, LLC*, 7 Cal. 5th 862 (2019). "Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true

conflict exists." *Id.* at 151. "Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.'" *Id.* (citation omitted). "A different governmental interest analysis must be performed with respect to each particular issue." *Id.* (discussing the "doctrine of dépeçage, under which different states' laws can be applied to different issues in the case.").

The first step "requires looking at the law of the potentially affected jurisdictions 'with regard to the particular issue in question'" to see whether the laws differ in a material aspect. *Id.*; *Stonewall*, 17 Cal. Rptr. 2d at 718 ("The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical."). The question is not whether the laws of two jurisdictions are "different in the abstract, but whether they are different with respect to the particular issues disputed in the case." *Chen*, 213 Cal. Rptr. 3d at 151. California cases that have answered this question provide useful guidance.

In *Chen*, the California Court of Appeals applied this issue-specific test in the context of a lawsuit brought by passengers and surviving relatives of passengers of a bus accident against the manufacturer and distributor of the

5

vehicle. *Id.* at 146–47. The court concluded that with respect to the strict products liability claim, there was a significant difference between California law and Indiana law. *Id.* at 154.[2] Under California law, a plaintiff could recover for a defectively designed product *even if* the seller used reasonable care. *Id.* In "marked" contrast, under Indiana law, a plaintiff could not recover for a defectively designed product if the seller used reasonable case in designing the product. *Id.* In other words, under Indiana law the exercise of reasonable care in designing a product was a complete defense to the design defect claim—under California law, it was not.

In *Stonewall*, the California Court of Appeals applied this issue-specific test in a lawsuit brought by insurers of the manufacturer of a defective car battery that exploded, causing severe damage to an individual who was trying to jump-start a car. 17 Cal. Rptr. 2d at 714–15. The court concluded that with respect to the punitive damages claim, there was a difference between California law and Wisconsin law. *Id.* at 716–18. Under Wisconsin law, the manufacturer of the battery could be indemnified against the claim for punitive damages pursuant to an insurance policy. *Id.* at 717. In contrast, under California law, the manufacturer's insurance policy would not insulate it from punitive damages because California public policy prohibited a company from being indemnified with respect to punitive damages. *Id.* at 716. Therefore, under California law, the manufacturer of the battery was subject to punitive

---

[2] The *Chen* court noted that, while the parties had identified seven specific issues on which California and Indiana law differed, the "strict products liability" issue was the only one that was relevant to the outcome. 213 Cal. Rptr. 3d at 154.

damages—under Wisconsin law, it was not. *Id.* at 717–18 ("In short then there is a true conflict of laws here because the substantive law of California leads to a different result than the substantive law of Wisconsin.").

In *Chen* and *Stonewall*, there was a significant difference between the two states' laws with respect to a particular issue disputed in the case. In *Chen*, the manufacturer of the bus could avoid liability on the defective design claim under Indiana law if it could show that it exercised reasonable care. In *Stonewall*, the manufacturer of the battery could avoid liability for punitive damages based on an insurance policy under Wisconsin law. In each case, therefore, the California Court of Appeals proceeded with the next steps of the governmental interest test after finding that application of the substantive law of California led to a different result than application of the law of the other state.

Here, Personnel has not shown that California and Indiana law materially differ with respect to the particular issues disputed in the case. In support of its argument that California law applies, Personnel states that most of the workers' compensation claims originated in California and that most of the payments made pursuant to the workers' compensation policies were on California claims. Dkt. 116 at 5. Citing boilerplate provisions of the Restatement (Second) Conflict of Laws, dkt. 116 at 5-7, Personnel argues that

7

this "location of insured risk" is the "only" factor that California courts would consider in making a choice-of-law determination, dkt. 136 at 1.[3]

Personnel gives short shrift to any discussion of either California or Indiana's substantive law that would be relevant to the outcome of any claim in this suit.  For California substantive law, Personnel devotes a paragraph of its brief to stating that workers' compensation insurance is in California's Constitution; workers' compensation is regulated by California's Legislature; and that "decisional law" has "reinforced various protections for employers in dealing with insurance companies with respect to workers' compensation coverage."  Dkt. 116 at 6-7 (string cite of California cases dealing with workers' compensation insurance).  Regarding Indiana law, Personnel states only that workers' compensation insurance is not mentioned in Indiana's constitution and that Indiana does not have "particularly developed decisional law creating protections for employers under workers' compensation policies."  Dkt. 116 at 7.  Personnel's analysis of Indiana caselaw is limited to how Indiana courts analyze choice-of-law issues, *see* dkt. 116 at 8–11, not how Indiana courts approach substantive issues related to breach of contract or bad faith claims.

Inexplicably, Personnel does not apply the governmental interest approach to any issues relevant to the outcome of this case, or even mention the governmental interest analysis, even though California courts have used that test to resolve choice-of-law conflicts "[f]or over four decades."  *Sullivan,*

---

[3] Personnel argues that an Indiana court would also rely heavily on the "location of the insured risk" in making a choice-of-law determination.  *See* dkt. 116 at 8–11.

8

127 Cal. Rptr. 3d at 194.  Personnel also does not explain how California and Indiana law differ with respect to the particular issues disputed in the case, that is, whether application of the substantive law of California would lead to a materially different result than application of the substantive law of Indiana.

Therefore, the Court cannot determine whether the laws of California and Indiana differ in a material aspect with respect to the particular issues presented in this case.  *Chen*, 213 Cal. Rptr. 3d at 151; *Stonewall*, 17 Cal. Rptr. 2d at 718; *see Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 727 (7th Cir. 2021) (the court does not "craft new arguments for a party, especially in civil cases and especially when the party is represented by counsel.").  And in the absence of any finding with respect to the first step, the Court does not proceed with the second and third steps of the government interest approach.  *Chen*, 213 Cal. Rptr. 3d at 151 ("Second, if there is a difference [between the laws of the two jurisdictions] . . . . Third, if the court finds that there is a true conflict [between the laws of the two jurisdictions].").

## IV.
## Conclusion

The motion for choice of law is **DENIED**.  Dkt. [115].  Because the Court did not consider any new arguments raised in Personnel's reply brief, dkt. 136, Protective's motion for leave to file a surreply is **DENIED as moot**.  Dkt. [137].

The parties may brief choice-of-law arguments in connection with summary judgment motions to the extent choice of law may be determinative to the outcome of a particular issue, as outlined above.

**SO ORDERED.**

Date: 3/2/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Daron Barsamian
Roxborough Pomerance Nye and Adreani LLP
5820 Canoga Avenue  Suite 250
Woodland Hills, CA 91367

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Jason R. Burke
BLACKWELL, BURKE & RAMSEY, P.C.
jburke@bbrlawpc.com

Amy Lynn Elson
Blackwell, Burke, & Ramsey P.C.
aelson@bbrlawpc.com

Vincent S. Gannuscio
ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
vsg@rpnalaw.com

Joseph C Gjonola
Roxborough Pomerance Nye & Adreani LLP
jcg@rpnalaw.com

Aaron D. Grant
LEWIS WAGNER, LLP
agrant@lewiswagner.com

Aidan M. McCormack
DLA PIPER LLP (US)
aidan.mccormack@dlapiper.com

Michael P. O'Day
DLA PIPER LLP (US)
michael.oday@dlapiper.com

Adam J. Pie
DLA Piper LLP US
adam.pie@dlapiper.com

William W. Reichart, III
DLA PIPER LLP (US)
wes.reichart@dlapiper.com

Nicholas P Roxborough
Roxborough Pomerance Nye and Adreani LLP
npr@rpnalaw.com

Ryan Salsig
Roxborough Pomerance Nye and Adreani LLP
rrs@rpnalaw.com